RAMÍREZ v. THE AMERICAN RAILROAD COMPANY OF PORTO RICO.

APELACIÓN procedente de la Corte de Distrito de Mayagüez.

No. 670.—Resuelto en abril 25, 1911.

DAÑOS Y PERJUICIOS—NEGLIGENCIA PER SE.—El mero hecho de caminar un tren a gran velocidad no es negligencia *per se,* siempre que sea compatible con la seguridad de los pasajeros; no lo es tampoco el caminar a una velocidad mayor que la fijada en los itinerarios, si no se demuestra que al establecerla, lo fué por la seguridad de los pasajeros y no por alguna otra circunstancia independiente de aquélla. En estos casos debe probarse que la velocidad del tren, dadas las condiciones del sitio, era incompatible con la seguridad de los pasajeros.

ID.—INDEMNIZACIÓN QUE DEBE CONCEDERSE.—En reclamaciones de daños y perjuicios por negligencia, la indemnización no ha de limitarse a los gastos que el accidente hubiera ocasionado al demandante, sino que, habiendo éste alegado y probado, haber sufrido daños que no pueden estimarse en pesos y centavos, el juez puede y debe apreciarlos para fijar la cuantía de la indemnización, pues en acciones de esta naturaleza, los sufrimientos y consecuencias probables del accidente, constituyen un elemento integrante de los daños que sirven de fundamento a la reclamación.

APELACIÓN—PRUEBAS—CREDIBILIDAD O PARCIALIDAD DE UN TESTIGO.—La credibilidad o parcialidad de un testigo puede investigarse en las repreguntas, y las partes tienen derecho a hacer todas aquellas que tiendan a ese fin; sin embargo, cuando no se permita a una parte formular repreguntas en este sentido, pero no se le niegue en absoluto el derecho de probar tal extremo, permitiéndosele hacerlo por medio de otra prueba, el error no es suficiente a justificar la revocación de la sentencia.

ID.—APRECIACIÓN DE PRUEBAS CONTRADICTORIAS.—La apreciación de la corte inferior en los casos de pruebas contradictorias debe ser aceptada por el tribunal de apelación, si no se demuestra que aquella corte procedió movida por pasión, prejuicio o parcialidad, o que incurrió en manifiesto error.

Los hechos están expresados en la opinión.

Abogados del apelante: *Sr. N. B. K. Pettingill y Fernando Vázquez.*

Abogado de la apelada: *Sr. J. E. Benet.*

EL JUEZ ASOCIADO SR. ALDREY, emitió la opinión del tribunal.

La demandante alega como hechos esenciales de su reclamación contra la demandada, que el 15 de marzo de 1910, viajaba como pasajera en un tren de la compañía demandada, de Mayagüez para San Germán, y que después de salir de la

estación de Filial Amor, el maquinista condujo la locomotora de dicho tren negligentemente y con un desprecio inaudito para la seguridad de los pasajeros, poniendo la máquina a mayor velocidad de la acostumbrada y de la que pueden correr dichos trenes por las vías de la compañía demandada, debido al sin número de curvas, a los desvíos de paso inseguro que hay en esa sección y al estado deplorable en que la demandada tiene sus vías, coches y material de arrastre, produciéndose por todo esto el descarrilamiento del tren y volcadura de los coches de pasajeros, por consecuencia del cual la demandante fué sacada de su asiento y cayó al suelo recibiendo varios golpes en los brazos, cuello, cabeza y espalda a consecuencia de los cuales le sobrevino una fuerte conmoción nerviosa y una abundante hemorragia que la retuvo en cama por más de quince días y después quedó con una fuerte postración y debilidad, siendo desde entonces anormales sus períodos menstruales, originándosele gastos en médicos y medicinas como consecuencia de la culpa y negligencia de la demandada, por lo que le reclama un mil dollars por los perjuicios y las costas.

La contestación de la compañía demandada admitió el descarrilamiento y volcadura de coches de pasajeros en el día y sitio especificados, negó todos los demás extremos de la demanda y pidió que ésta se declarara sin lugar.

La prueba de culpa o negligencia presentada por la parte demandante, consistió en la declaración de varios testigos quienes manifestaron, unos, que el tren en los momentos del descarrilamiento marchaba a gran velocidad y otros que la velocidad era excesiva y más de la acostumbrada.

Sólo un testigo, Mr. Manes, segundo jefe de la Policía Insular, cuando ocurrió el accidente, declaró además haber tenido unos cuantos años de experiencia en la construcción y operación de ferrocarriles, conociendo también perfectamente el manejo de locomotoras: que el día a que se refiere la demanda viajaba en ese tren y que después que se calmó la alarma ocurrida con el descarrilamiento y volcadura de los

coches, investigó para determinar su causa, encontrando que en el sitio del suceso había desaparecido un guarda-rail que quedaba frente a un desvío, siendo esto la causa del descarrilamiento y volcadura de los coches, pues las marcas de los clavos en la traviesa demostraban que el guarda-rail había sido colocado en forma defectuosa y no de una manera segura: que él ha colocado centenares de guarda-railes y nunca puso uno tan débil y tan mal colocado: que aquel guarda-rail fué colocado solamente con clavos en las traviesas de madera, pero no los tenía por el otro lado, ni tornillos para sujetarlo.

Las declaraciones de los testigos respecto a la velocidad del tren, no pueden servir de base para apreciar culpabilidad o negligencia, porque son tan vagas e indeterminadas que por ellas no pueden saberse las millas que corría el tren en un tiempo dado y porque depende de la apreciación particular de cada testigo.

Además, el mero hecho de caminar un tren a gran velocidad no es negligencia *per se,* siempre que sea consistente con la seguridad de los pasajeros; ni tampoco lo es el caminar a más velocidad de la fijada en los itinerarios, si no se demuestra que al establecerla, lo fué por la seguridad de los pasajeros y no por alguna otra circunstancia independiente de aquélla. (Véase Cyclopedia of Law and Procedure, tomo 33, páginas 791 y 792, notas.)

Lo que se debió probar fué que la velocidad del tren, dadas las condiciones del sitio, era incompatible con la seguridad de los pasajeros.

Por consiguiente, la única evidencia en este pleito para estimar culpabilidad o negligencia en la compañía demandada es la declaración de Mr. Manes, que atribuye el accidence a defectuosa colocación de un guarda-rail en el sitio del suceso. No se presentó prueba en contrario, y si dijo la verdad, existe culpabilidad o negligencia.

La parte demandada quiso atacar la credibilidad de este testigo por medio de repreguntas. El había declarado en el interrogatorio directo, que después del accidente tuvo un dis-

gusto con el Señor Villar, empleado de la compañía demandada y que ordenó el arresto de los empleados del tren.

La compañía entonces le repreguntó:

"Después que Vd. intervino en todo eso, ¿qué le ocurrió con algún empleado de la compañía?"

Objetada esta repregunta por la demandante, la corte no la permitió a no ser que se demostrara que tenía algo que ver con el asunto. Entonces el abogado de la demandada manifestó que quería demostrar la parcialidad o imparcialidad del testigo porque éste tuvo después un disgusto de consideración con el encargado del tren y después fué acusado el testigo por la compañía y condenado también.

La corte entonces resolvió: Si se desea, puede probar eso por otra prueba, pero no en las preguntas ahora. La demandada tomó excepción.

La credibilidad o parcialidad de un testigo puede investigarse en repreguntas y la demandada tenía derecho a hacer las que se le negaron, tendentes a ese fin.

Siempre son importantes esas repreguntas y con mayor razón cuando por un solo testigo se trata de justificar un hecho esencial, pero no ordenaremos un nuevo juicio porque no se le negó en absoluto el derecho de probar tal extremo y se le permitió que lo hiciera por otra evidencia, de que en este caso podía disponer porque tratándose de una acusación y condena, deben constar en un récord público.

La corte inferior dió crédito a la declaración del testigo Mr. Manes, que es bastante para estimar culpabilidad o negligencia en la compañía demandada y nosotros no alteraremos esa apreciación (de acuerdo con lo que repetidamente hemos resuelto en otras ocasiones) pues no se nos ha demostrado que la corte inferior haya procedido con pasión, prejuicio o parcialidad ni que haya incurrido en manifiesto error. La demandante manifestó en su declaración en el juicio, que en la caída sufrió golpes, en la espalda, en el costado, en el cerebro en la cabeza y en el bajo vientre, poniéndose también nerviosa, y habiendo marchado después a una casa de San Ger-

mán, sufrió allí una fuerte hemorragia vaginal, faltándole aún dos o tres días para su regla, estando luego enferma en casa de sus padres por quince o diez y seis días, asistida por una comadrona, a la que pagó treinta y dos o treinta y cinco pesos, gastando además en medicinas catorce pesos; que no se encuentra después de ese accidente tan bien como antes y que aunque continua con sus períodos, ahora tiene que guardar cama por cuatro o cinco días con síntomas que antes no sentía.

La declaración de esa testigo es la única evidencia respecto a tales extremos y aún cuando en algunos particulares de ella hay evidencia contradictoria, sin embargo, el juez de la corte inferior que escuchó toda la evidencia y que vió y oyó expresarse a la demandante, resolvió el conflicto dándole crédito y estimó que los trastornos que padeció fueron consecuencia del accidente, por lo que no debemos alterar esa resolución por las razones antes consignadas en cuanto al testigo Mr. Manes.

Resta sólo resolver si la corte debió condenar únicamente a pagar los 46 o 49 pesos de perjuicios por los gastos hechos por la demandante o si pudo dictar su condena por quinientos como lo hizo.

La demandante ha alegado y probado, no solamente el gasto de 46 o 49 pesos, sino que ha sufrido daños que no pueden estimarse en pesos y centavos pero que el juez puede y debe apreciar para fijar la cuantía de la indemnización, pues en acciones como la que se ejercita en el presente caso, no debe limitarse al dinero gastado o dejado de ganar, sino que puede tener en cuenta los sufrimientos y consecuencias probables del daño.

Así lo ha resuelto ya esta Corte Suprema en el caso de *Alejandro Díaz* v. *San Juan Light and Transit Co.*, resuelto en 20 de enero de 1911 en el que se dice lo siguiente:

"Esta misma Corte Suprema en el ya citado caso de *Zalduondo* v. *Sánchez*, por medio del Juez Asociado Sr. Wolf, se expresó en los si-

guientes términos:. 'La corte inferior en vista de las declaraciones de los testigos pudo inferir que el demandante estuvo sin conocimiento por unos cinco días y enfermo veinte o veinte y cinco días; que sufrió heridas profundas cuyas cicatrices podían notarse todavía en la época del juicio, (pues fueron reconocidas por el Dr. Goenaga); que el demandado sufre zumbidos en los oídos así como también pérdida de su memoria y otros síntomas, y está amenazado de contraer cualquiera forma de locura. De qué modo, hasta cuándo, o en qué fecha pueden los actos del apelante efectar al trabajo o a la vida del demandante, es imposible predecirlo. No podría determinarse con precisión, pero puede la corte determinarlo dentro de su criterio. Nada se dice en las declaraciones con referencia a los sufrimientos mentales que haya tenido el demandante lo que es asimismo un reconocido elemento en los daños y perjuicios en todos los pleitos de esta clase.' Así lo ha reconocido la Corte Suprema de los Estados Unidos en el caso de *McIntyre* v. *Giblin,* 131 U. S., CLXXIV.

"Sin resolver la cuestión de si los daños punitivos o ejemplares son recuperables, creemos que la corte inferior no se extralimitó en la apreciación de los daños razonables sufridos y que pudiera sufrir el demandante, al fijarlos en la suma de mil dollars y debe confirmarse la sentencia dictada por dicha corte.

"Aplicando los anteriores principios y los contenidos en el artículo 1804 del Código Civil Revisado al caso concreto que resolvemos, encontramos que en la demanda se alega que el demandante sufrió daños y perjuicios, que aprecia en seis mil pesos, y que la causa inmediata y natural de dichos daños y perjuicios fué el acto. negligente de uno de los empleados de la demandada que actuaba en su servicio y con ocasión de sus funciones.

"La prueba practicada no demuestra que el demandante dejara de ganar a consecuencia de las lesiones recibidas una suma determinada de dinero, o que tuviera que pagar al médico que lo asistiera otra determinada suma, etc., pero sí demuestra que el demandante, hombre de 51 años de edad que trabajaba en la agricultura y llevaba y traía las cosechas y las vendía y vivía de su trabajo y sostenía a su familia, al bajar de uno de los carros eléctricos de la demandada, en la parada 7½ de la línea de San Juan a Río Piedras, cayó al suelo, por haber el motorista hecho caminar el carro en aquel momento sin la debida prudencia y circunspección, y sufrió un fuerte golpe que le privó del conocimiento por algunos instantes, le fracturó el maxiliar inferior y le ocasionó rasguños en las piernas y otras partes del cuerpo, que permaneció en el hospital curándose de las heridas un

mes más o menos y que examinado en el acto del juicio, o sea, un año y cinco meses después de la caída, presentaba en el lado derecho de la cara y como consecuencia de la fractura, 'una contracción que significa una parálisis,' y podía 'hablar pero masticar muy difícilmente' y 'con dificultad abrir y cerrar la boca.' No resulta de la evidencia que el demandante haya quedado impedido de trabajar, pero sí que se hallaba, en la época en que se practicaron las pruebas, padeciendo de una enfermedad nerviosa a consecuencia de la caída, según opinó el Dr. Stahl, uno de los peritos que declaró en el juicio.

"Siendo esto así, de acuerdo con la ley y la jurisprudencia, procedía que el juez apreciara por sí mismo los perjuicios y determinara el montante de la indemnización que la demandada debía pagar al demandante. Y al hacerlo así, la corte no cometió los errores que le atribuye la parte apelante.

"No se trata en el presente caso de daños punitivos o ejemplares, sino de una compensación por daños y perjuicios sufridos. Para acordar tal compensación, no es necesario que se pruebe por el demandante la pérdida sufrida en pesos y centavos, sino que bastará que, en casos de esta naturaleza, se pruebe que se sufrió por el demandante, ocasionado por la culpa o negligencia de la demandada y no por su culpa o negligencia, un daño efectivo, consistente en dolores físicos, pérdida de trabajo, reclusión en un hospital, sufrimientos mentales etc.

"La indemnización en este caso se fijó por la corte inferior en dos mil pesos, y aún cuando tal vez podría haberse apreciado en menos cantidad, no la encontramos inmoderadamente inadecuada y siendo esto así no debemos alterarla."

Tal doctrina es aplicable a este caso porque sin duda el juez tuvo en cuenta la naturaleza del daño sufrido por la demandante, cuyas consecuencias no suelen terminar con una enfermedad inmediata, sino que a veces se prolongan por mucho tiempo.

Por todas estas razones y no pareciéndonos excesiva la cantidad concedida como indemnización, la sentencia debe ser confirmada en todas sus partes.

*Confirmada.*

Jueces concurrentes: Sres. Presidente Hernández y Asociados, MacLeary, Wolf y del Toro.